



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 2 4 2007

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JUDY C. CARPENTER, §
§
       Plaintiff, §
§
VS. § NO. 4:06-CV-414-A
§
MICHAEL J. ASTRUE, §
COMMISSIONER OF SOCIAL §
SECURITY, §
§
       Defendant. §

MEMORANDUM OPINION
and
ORDER

Came on for consideration the above-captioned action wherein

Judy C. Carpenter is plaintiff and the Commissioner of Social

Security, currently Michael J. Astrue,[1] is defendant.  The court

has carefully considered the proposed findings, conclusions, and

recommendation of the United States Magistrate Judge ("FC&R"),

plaintiff's objection thereto, defendant's response to

plaintiff's objection, the record, and applicable authorities.

For the reasons given below, the court has concluded that

plaintiff's objection lacks merit.

---

[1] On February 12, 2007, Michael J. Astrue succeeded Jo Anne B. Barnhart, the defendant named in the complaint, as the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michael J. Astrue is thus automatically substituted as the proper party.

I.

## Standards of Review

Pursuant to 42 U.S.C. § 405(g), the only issues before the court are whether the final decision of the Commissioner that plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence, and whether the decision complies with applicable legal standards. Crouchet v. Sullivan, 885 F.2d 202, 204 (5th Cir. 1989). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. Richardson v. Perales, 402 U.S. 389, 390 (1971). The court "will not re-weigh the evidence, try the questions de novo, or substitute [its] judgment for the Commissioner's, even if [it] believe[s] the evidence weighs against the Commissioner's decision." Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002). "Conflicts in the evidence are for the Commissioner and not the courts to resolve." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).

Substantial evidence is more than a mere scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Crouchet, 885 F.2d at 204. In determining whether the Commissioner's decision is supported by substantial evidence, the court considers (1) objective medical facts and clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability as testified to by the claimant,

and (4) the claimant's age, education, and work history.  Smith
v. Schweiker, 646 F.2d 1075, 1077 (5th Cir. Unit A June 1981).
"'[N]o substantial evidence' will be found only where there is a
'conspicuous absence of credible choices' or 'no contrary medical
evidence.'"  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir.
1988) (quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir.
1983)).

Once the magistrate judge has issued his proposed findings,
conclusions, and recommendation, and the plaintiff has made
objections thereto, the district judge makes a de novo
determination of those portions of the magistrate judge's
proposed findings, conclusions, or recommendation to which
specific objection is made.  28 U.S.C. § 636(b)(1); Fed. R. Civ.
P. 72(b).  The court now makes that determination in the context
of the principles mentioned above.

## II.

### Background

Plaintiff brings this action pursuant to Section 405(g) of
the Social Security Act, Title 42 of the United States Code, for
judicial review of a final decision of the Commissioner of Social
Security denying her claim for disability insurance benefits
under Title II of the Social Security Act.

In 1997, plaintiff sustained a work-related back injury
while lifting a sixty-five pound cannister of soda syrup.
Despite her injury, she continued working full time until August

3

of 2000. From May of 2001 to May of 2003, plaintiff was able to work part time, but her back pain eventually caused her to discontinue working. In March of 2002, plaintiff sought treatment from her primary care physician, Georgia Allen, M.D. ("Dr. Allen"). Dr. Allen prescribed a course of steroids, ordered a lumbar magnetic resonance imaging ("MRI") scan, and ultimately referred plaintiff to David Findlay, M.D. ("Dr. Findlay"), for pain management. Evaluations of plaintiff's MRI scans revealed that plaintiff had a bulging lumbar disc at L5-S1 with mild underlying disc desiccation, mild degenerative change in the cervical spine without evidence of acute fracture, and a moderately degenerative change of the dorsal spine with anterior and lateral spurring.

In May of 2002, Dr. Findlay diagnosed plaintiff with chronic lower back pain, coccydynia, possible S-I joint arthropathy, L5-S1 lumbar-spine degenerative joint disease with bilateral radiculopathy, and probable discogenic pain. To treat her pain, Dr. Findlay gave plaintiff epidural steroid injections and prescribed several medications. Dr. Findlay continued treating plaintiff throughout 2002 and into 2003. In March of 2003, plaintiff reported that she was "doing much better" and that despite intermittent pain with motion, "she [was] able to perform activities of daily living quite well." Tr. at 191. At that time, plaintiff reported that her pain was not significant, maybe registering as a one or two on a scale of one to ten, and her

4

concerns with respect to her pain had diminished dramatically.

On April 28, 2003, plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act. As part of the disability application process, plaintiff underwent a mental status evaluation on July 8, 2003. In the evaluation, plaintiff's chief complaint was back pain so bad that it made her feel suicidal at times, although she never attempted suicide or had to be hospitalized for emotional problems. The interviewer noted that during the session, plaintiff was obviously in a great deal of pain and had trouble remaining comfortable. Plaintiff told the interviewer that recent treatments had been successful in relieving some of her pain and other symptoms. In addition to pain, plaintiff reported significant depression and difficulty sleeping. At the time of her evaluation, plaintiff had been prescribed the following medications: Neurontin (for mood stabilization), Bextra (an anti-inflammatory), alprazolam (for anxiety), tramadol and hydrocodone (for pain), lexapro (an anti-depressant), and carisoprodol (a muscle relaxant).

At the mental status evaluation, plaintiff reported that her daily living was greatly limited by her pain. The evaluator stated that plaintiff's "mood could best be described as grim," Tr. at 322, and gave a guarded prognosis in light of plaintiff's six-year history of dealing with pain and persistent feelings of hopelessness. The evaluator assessed a Global Assessment of

Functioning ("GAF") score of 55,[2] which reflected moderate symptoms or moderate impairment in functioning.

Plaintiff also suffered from chronic headaches. In 2003, J. Steven Welch, D.O. ("Dr. Welch"), ordered a MRI scan of plaintiff's brain and referred her to William E. McIntosh, D.O. ("Dr. McIntosh"), a neurologist. Reviewing the MRI scan of plaintiff's brain, Dr. McIntosh noted that plaintiff may have had a vascular malformation in the left hemisphere, but it was incidental and probably asymptomatic. Dr. McIntosh noted that "[plaintiff] act[ed] like everything [was] hypersensitive and painful to her, and yet she ha[d] no focal weakness," concluding that her problems were "functional rather than organic." Tr. at 379. Dr. McIntosh believed that plaintiff had significant psychiatric issues related to previous sexual and physical abuse.

On a follow-up visit with Dr. Findlay in July of 2003, plaintiff reported pain in the bottom of the leg, which was triggered by back movement. The pain had been there for years, and ranged in intensity from a three out of ten to an eight out of ten. The pain was aggravated by bending over, sitting, and generalized activity, and it was alleviated by resting, sleeping, and standing. In August of 2003, Dr. Findlay performed an ablation of plaintiff's L5-S1 disc, resulting in a reported 50% decrease in plaintiff's symptoms, and Dr. Findlay later

---

[2]The GAF score "is a standard measurement of an individual's overall functioning level with respect only to psychological, social, and occupational functioning." Boyd v. Apfel, 239 F.3d 698, 701 (5th Cir. 2001) (quotation and citation omitted).

administered an epidural lysis of adhesions at the left L5 nerve root to relieve refractory bilateral lower extremity radiculopathy. In August of 2003, the Social Security Administration denied plaintiff's application for benefits both initially and on reconsideration.

In connection with psychiatric ailments, plaintiff began seeing Maryrita K. Mallet, M.D. ("Dr. Mallet"), a psychiatrist, in December of 2003. Dr. Mallet diagnosed plaintiff with major depressive disorder and chronic pain disorder, and rated her with a GAF score of 45.[3]

Dr. Findlay and Dr. Mallet, among other, continued treating plaintiff throughout 2004 and 2005. In June of 2004, plaintiff underwent sacral radiofrequency neurolysis. As a result of this and other treatment administered by Dr. Findlay, plaintiff reported an overall 50% improvement in her pain level in October of 2004. In January of 2005, Dr. Mallet completed a written assessment of plaintiff's ability to perform work-related mental activities. Dr. Mallet concluded that plaintiff had a limited but satisfactory ability to follow work rules, interact appropriately with co-workers, deal with the public, use judgment, and interact appropriately with supervisors.

---

[3]"A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32).

Plaintiff's ability to deal with work stresses, function independently, and maintain attention/concentration were seriously limited but not precluded. Plaintiff's ability to understand, remember, and carry out complex job instructions was seriously limited but not precluded, and her ability to do the same with simple job instructions was limited but satisfactory. Plaintiff's ability to behave in an emotionally stable manner, react predictably and appropriately in social situations, and demonstrate reliability in work practices--including attendance-- were seriously limited but not precluded, and her ability to maintain personal appearance was limited but satisfactory. Dr. Mallet opined that plaintiff's physical and mental ailments would cause frequent absences from work. Among other things, Dr. Mallet based her findings on plaintiff's poor sleep, chronic depression, chronic suicidal thoughts, and chronic pain. She concluded that plaintiff could not work an eight-hour day on a regular basis.

In June of 2005, the administrative law judge ("ALJ") conducted an administrative hearing on plaintiff's application for disability benefits. Plaintiff appeared with counsel and testified. On July 28, 2005, the ALJ issued his decision that plaintiff was not disabled. The ALJ concluded that plaintiff suffered from a severe combination of impairments, but she did not have any impairment or combination thereof that met or equaled the severity of a listed impairment for purposes of a

disability finding at step three of the sequential evaluation process.

The ALJ based his finding that plaintiff was not disabled on his conclusion that plaintiff retained the residual functional capacity to obtain, perform, and maintain a limited range of light work. "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The ALJ felt that this finding "afford[ed] [plaintiff] the benefit of every doubt and [was] quite generous." Tr. at 23. The state agency medical consultants had determined that plaintiff could perform a full range of medium work, but the ALJ believed the light work classification was more appropriate, basing his conclusion on "the record as a whole, including particularly the objective medical evidence[.]" Id.

The ALJ further found that plaintiff's ability to perform the full range of light work was reduced by plaintiff's need: (1) to avoid more than occasional stooping, crouching, and climbing ladders and scaffolds; (2) to perform jobs with a reasoning

9

development level of one, two, or three; and (3) to avoid extensive and involved contact with the public. Based on the testimony of a vocational expert, the ALJ ultimately concluded that plaintiff was not disabled because, even with the foregoing limitations, the national and local economies presented a significant number of jobs that plaintiff could perform.

Displeased with the result of the hearing, plaintiff appealed the ALJ's decision. The Appeals Council denied plaintiff's request for review, leaving the ALJ's determination as the final decision of the Commissioner. The Appeals Council did, however, expand the record to include medical records dated May 18, 2005, to July 8, 2005, from Dr. Findlay. A medical source statement completed by Dr. Findlay was among the documents added to the record by the Appeals Council.

In the medical source statement, Dr. Findlay opined that plaintiff could stand and/or walk continuously for fifteen minutes before alternating postures, sitting, or lying down; she could sit for fifteen minutes before alternating postures, standing, or lying down; and during an eight-hour day, plaintiff could only stand and/or walk continuously or sit continuously for less than one hour. In Dr. Findlay's opinion, plaintiff would have to rest lying down for a period greater than four hours during an eight-hour workday, she could only lift and/or carry up to ten pounds occasionally, and she could never lift and/or carry more than ten pounds. The ALJ did not consider Dr. Findlay's statement, but the Appeals Council did consider it, along with

the other new evidence submitted by plaintiff.

### III.

#### Plaintiff's Specific Objection to the FC&R

In her solitary objection, plaintiff argues that "[t]he Magistrate Judge's finding that the ALJ's physical residual functional capacity assessment for the full range of light work is still supported by substantial evidence, despite a new detailed expert physical assessment from [plaintiff's] long-term treating pain management physician, is erroneous." Pl.'s Obj. at 3. The new expert physical assessment to which plaintiff refers is the medical source statement from Dr. Findlay. From the face of her objection, it is clear that plaintiff is asking the court to reweigh the evidence forming the basis of the Commissioner's decision.[4]

The court must review the record, in its entirety, to determine if substantial evidence supports the final decision of the Commissioner. See Crouchet, 885 F.2d at 204. In actions like this one, the Commissioner's final decision includes the Appeals Council's denial of a claimant's request for review. Higginbotham v. Barnhart, 405 F.3d 332, 337 (5th Cir. 2005). Accordingly, "the record before the Appeals Council constitutes part of the record upon which the final decision is based." Id.

---

[4]Indeed, plaintiff contends that "because the new evidence from Dr. Findlay contradicts the evidence previously before the ALJ, a 'weighing' of the new and old evidence is required by this Court." Pl.'s Obj. at 6 (emphasis in original). However, the court cannot reweigh the evidence; the court must affirm the decision of the ALJ if it is supported by substantial evidence and complies with applicable legal standards. See Crouchet v. Sullivan, 885 F.2d 202, 204 (5th Cir. 1989).

This includes new evidence before the Appeals Council that was not reviewed by the ALJ. Id. In the instant action, the Appeals Council explicitly stated that it "considered . . . the additional evidence" when it denied plaintiff's request for review. Tr. at 6. The court must now review the record as a whole, including the new evidence submitted for the first time to the Appeals Council, in order to determine whether substantial evidence supports the Commissioner's findings. See Wilkins v. Sec'y, Dept. of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991); Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992); Higginbothan v. Barnhart, 163 Fed. Appx. 279, 281 (5th Cir. 2006).

Plaintiff argues that since Dr. Findlay is a treating source, his opinions on the medical source statement are dispositive. If accepted, the opinions expressed in the medical source statement would require a finding that plaintiff is disabled. The Commissioner will give the opinions of a treating source on the issues of the nature and severity of a claimant's impairments controlling weight when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(d)(2). See also Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). In support of his findings, the ALJ extensively reviewed plaintiff's clinical and diagnostic records and concluded that:

Consistent with findings on her physical examinations, repeated diagnostic studies of her cervical, lumbar, and thoracic spine generally have revealed only mild degenerative changes. There has been no evidence whatsoever of significant spinal canal stenosis, significant neural foraminal stenosis, or nerve root impingement. Furthermore, a discogram and post-discogram CT performed in July 2003 concluded the L4-5 and L5-S1 discs were normal.

Tr. at 17-18. The ALJ further noted that records from Dr. Findlay indicated that plaintiff had reported a 40% to 50% improvement with treatment, and "[b]esides an incidental finding of a venous malformation, all diagnostic studies of [plaintiff's] head and brain have been essentially unremarkable." Id. at 18. The foregoing clinical and laboratory diagnostic records constitute substantial evidence in support of the ALJ's conclusion regarding plaintiff's residual functional capacity. Dr. Findlay's medical source statement does not add to or change any of the clinical or laboratory diagnostic records; rather, it is just his interpretation thereof. It is within the province of the Commissioner, not the court, to determine the credibility of medical experts and weigh their opinions accordingly. Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990). See also Newton, 209 F.3d at 452 ("Conflicts in the evidence are for the Commissioner and not the courts to resolve.").

Furthermore, Dr. Findlay's medical source statement is not entitled to controlling weight because it is inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2); Scott, 770 F.2d at 485. In the medical source statement, Dr. Findlay indicated that plaintiff's "condition

13

existed and persisted with the restrictions as outlined . . . at least since Aug[ust of] 2000." Tr. at 482. However, in a work history report completed in May of 2003, plaintiff explained that she had worked part time as a cashier in a convenience store from May of 2001 to May of 2003. In this capacity, she had to walk for one hour, stand for two hours, sit for two hours, and write, type, or handle small objects for one hour.

The court concludes that the decision of the ALJ is supported by substantial evidence and complies with applicable legal standards.

## IV.

## Conclusion and Order

For the reasons stated above, the court concludes that plaintiff's objection to the FC&R lacks merit. Therefore, the court accepts the magistrate judge's proposed findings, conclusions, and recommendation. Consistent therewith,

The court ORDERS that the Commissioner's decision be, and is hereby, affirmed.

SIGNED October 24, 2007.

JOHN McBRYDE
United States District Judge

14